J-S54032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
MICHAEL RAY JAMES, :
:
Appellant : No. 4 WDA 2016

Appeal from the PCRA Order November 30, 2015
in the Court of Common Pleas of Erie County,
Criminal Division, No(s): CP-25-CR-0000939-2013

BEFORE: BENDER, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 11, 2016**

Michael Ray James ("James") appeals from the Order dismissing his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S.A. § 9541-9546. We affirm.

On February 12, 2013, the U.S. Marshal's Fugitive Task Force served an arrest warrant on James, who was staying in a hotel with his girlfriend, De'Shuna Crosby ("Crosby"). The task force officers knocked on the door, James opened the door, and the officers placed him in handcuffs. James told the officers that Crosby and their 4-month-old son were inside. Crosby walked into the hallway, carrying the baby and the baby's car seat. Detective Mark Rosenthal ("Detective Rosenthal") conducted a search of the car seat, which revealed three plastic bags containing white powder tucked beneath the lining of the car seat. James admitted ownership of the drugs.

The officers turned over the substance to Pennsylvania State Trooper Donald Claypoole ("Trooper Claypoole"), who conducted a preliminary field test and weighed the substance. Trooper Claypoole's incident report indicated that the plastic bags contained 199 grams of cocaine. Ted A. Williams ("Williams"), a forensic scientist supervisor in Erie Regional Laboratory, conducted further testing. Williams's lab report stated that the three plastic bags contained a total of 128.9 grams of cocaine and 53.6 grams of heroin.

Following a jury trial, James was convicted of endangering the welfare of children, conspiracy to manufacture or possess a controlled substance with intent to deliver, possession of drug paraphernalia, and two counts each of possession with intent to deliver and possession of a controlled substance.[1] On January 10, 2014, the trial court sentenced James to an aggregate term of 9 years, 9 months to 19½ years in prison.[2] The trial court ordered that the sentence would be served consecutive to James's prior sentence, imposed following his guilty plea for involuntary manslaughter. James filed a Motion for Reconsideration, which the trial court denied. This Court affirmed James's judgment of sentence on November 10, 2014. **See Commonwealth v. James**, 113 A.3d 346 (Pa. Super. 2014) (unpublished memorandum).

---

[1] 18 Pa.C.S.A. §§ 4304(a)(1), 903; 35 P.S. §§ 780-113(a)(32), (30), (16).

[2] The two counts of possession with intent to deliver merged with the two counts of possession for sentencing purposes.

On April 13, 2014, James, *pro se*, filed the instant PCRA Petition. James subsequently retained private counsel, who filed a Supplemental PCRA Petition. The PCRA court issued a Pa.R.A.P. 907 Notice of Intent to Dismiss on October 8, 2015. James filed a Response. On November 10, 2015, the PCRA court issued an Amended Rule 907 Notice, and ultimately dismissed James's Petition on November 30, 2015. James's PCRA counsel filed a Motion to Withdraw as Counsel, which the PCRA court granted. After the PCRA court appointed James new counsel, James filed a timely Notice of Appeal and a court-ordered Rule 1925(b) Concise Statement.

On appeal, James raises the following questions for our review:

I. Whether trial counsel was ineffective for stipulating to the entry of the Pennsylvania State Police Lab Report analysis [] without confronting the lab technician who prepared said lab report?

II. Whether [appellate] counsel was ineffective for failing to raise on direct appeal the sufficiency of the evidence as to the conviction for endangering the welfare of children?

Brief for Appellant at 4.

The applicable standards of review regarding the denial of a PCRA petition and ineffectiveness claims are as follows:

Our standard of review of a PCRA court's [dismissal] of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

* * *

- 3 -

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petition pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

In his first claim, James argues that the PCRA court erred in finding that his trial counsel was not ineffective for stipulating to the entry of Williams's lab report. Brief for Appellant at 11. James claims that stipulating to the lab report results violated his Confrontation Clause rights, pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004),[3] and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).[4] Brief for

---

[3] In *Crawford*, the prosecution admitted into evidence a tape-recorded statement given by the defendant's wife, although she did not testify at trial. *See Crawford*, 541 U.S. at 39-40. The United States Supreme Court held that, where a witness does not testify at trial, the Confrontation Clause of the Sixth Amendment prohibits the introduction of testimonial statements, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id.* at 68-69.

[4] In *Melendez-Diaz*, affidavits reporting that seized evidence was cocaine were admitted into evidence without allowing the defendant the opportunity to cross-examine the lab analysts. *Melendez-Diaz*, 557 U.S. at 308. The United States Supreme Court held that the lab analysts' statements contained within the report, which were prepared specifically for trial, were testimonial in nature, and therefore, "the analysts were subject to confrontation under the Sixth Amendment." *Id.* at 324.

Appellant at 11. James asserts that his counsel's stipulation to the lab report was unreasonable because the lab report effectively doubled the number of possession with intent to deliver and possession charges against him, based on the finding that the bags contained both heroin and cocaine, thereby increasing his prison term. *Id.* at 11-12. James also argues that he should have been able to cross-examine Williams regarding the discrepancies between the initial field testing and the laboratory testing. *Id.* at 12-13. James contends that cross-examination of Williams could have revealed "anything from a mishandling in the chain of custody to a flat out discovery of misconduct," or other information that might have led to a different outcome at trial. *Id.* at 14.

At trial, James's trial counsel, in James's presence, stipulated to the introduction of Williams's lab report, which identified the contents and weight of the substances found in the baby's car seat. *See* N.T., 11/12/13, at 56-57. Additionally, James testified that he knew that the drugs were in the hotel room. *See* N.T., 11/12/13, at 108-09, 125. James also testified that while he was willing to admit to possession of the drugs, the drugs belonged to his friend, Marcus Robuck ("Robuck"), who had rented the hotel room. *See id.* at 106, 116, 117, 125. James stated that Robuck had brought the drugs inside with the intent to sell them, but that Robuck left earlier in the day, and left the drugs in the room. *See id.* at 106, 108.

Because the crux of James's defense rested on the premise that the drugs were not his, it would be reasonable for his trial counsel to stipulate to the contents of the lab report rather than to highlight the analyst's specific findings. Indeed, defense attorneys and defendants often stipulate to the nature of substances found in drug cases, due to a number of strategic considerations. *See Melendez-Diaz*, 557 U.S. at 328 (indicating that live testimony often adds no benefit to analysts' certificates, and can "highlight rather than cast doubt upon the forensic analysis").[5] Further, the lab report did not identify James as the perpetrator of the crimes, but merely identified the illegal substances. Thus, because the lab report did not implicate James's defense, James's disclaimer of ownership was not prejudiced by the stipulation to the report. Accordingly, James failed to demonstrate that his trial counsel was ineffective for stipulating to the lab report, and his first claim is without merit.

---

[5] Here, cross-examination regarding the discrepancies between the initial field test and Williams's lab report would have revealed that the initial field test found a higher total quantity of drugs. *See* Amended Notice of Intent to Dismiss, 11/10/15, at 3. James's trial counsel could have reasonably determined that highlighting the differences between the initial field test and the lab report would be detrimental to James's case. *See Commonwealth v. Howard*, 719 A.2d 233, 237 (stating that "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interest"). Moreover, the lab technician could not testify to the police's field tests, but instead would have been limited to explaining the lab test and results. *See* Amended Notice of Intent to Dismiss, 11/10/15, at 3-4.

In his second claim, James argues that the PCRA court erred in finding that James's appellate counsel was not ineffective for failing to raise, on direct appeal, a challenge to the sufficiency of the evidence regarding the endangering the welfare of children conviction. Brief for Appellant at 16. James asserts that there was insufficient evidence to sustain his conviction because there was no evidence that the child could have come into physical contact with the drugs, as the child was fully clothed, and the drugs were under both the car seat cover and the car seat lining. *Id.* at 17-18. James also claims that there was no evidence that he sold drugs from the hotel room, or in the presence of the child. *Id.* at 18. James claims that he suffered prejudice as a result of appellate counsel's failure to raise this issue because he received an additional 9 to 18 months consecutive sentence on the endangering the welfare of children conviction. *Id.*

Here, James has failed to show that the underlying claim, a challenge to the sufficiency of the evidence regarding the endangering the welfare of children conviction, is of arguable merit. A parent or guardian commits the offense of endangering the welfare of children if he "knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a). In order to sustain a conviction of this offense, the Commonwealth must establish the following elements:

> 1) the accused is aware of [his] duty to protect the child; 2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused has either failed to act or has taken action so lame or

meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Wallace*, 817 A.2d 485, 490-91 (Pa. Super. 2002) (citation omitted).

The record shows that the 4-month-old infant was staying in James's hotel room, which contained a significant quantity of cocaine and heroin. *See* N.T., 11/12/13, at 52-53; *see also* Amended Notice of Intent to Dismiss, 11/10/15, at 5. Trooper Church testified that upon entering the hotel room, he observed a digital scale and plastic bags, paraphernalia associated with drug trafficking. *See* N.T., 11/12/13, at 52. Trooper Church also stated that he did not observe any paraphernalia that would be used to consume, rather than sell, the drugs. *See id.* at 53.

Detective Rosenthal testified that when he asked Crosby to step into the hallway, she walked back into the room to retrieve the car seat and baby bag before leaving. *See* N.T., 11/12/13, at 34. The baby was still in the car seat at that time. *See id.* at 35. Detective Rosenthal testified that Crosby removed the infant from the car seat so he could conduct a search, and he found three plastic bags containing white powder inside the lining of the car seat. *See id.*

James testified that he knew the drugs were in the hotel room, and he did not dispute that he was in possession of the drugs. *See id.* at 108-09, 125. James also stated that he hid the drugs in his son's car seat. *See id.* at 110.

Contrary to James's argument that his child was not in danger because he could not have come into physical contact with the drugs, the statute merely requires that the child be placed in danger, not that the harm actually resulted. *See* 18 Pa.C.S.A. § 4304(a); *see also Wallace*, 817 A.2d at 491-92 (stating that "the statute does *not* require the actual infliction of physical injury. Nor does it state a requirement that the child [] be in imminent threat of physical harm. Rather[,] it is the awareness by the accused that his violation of his duty of care, protection and support is 'practically certain' to result in the endangerment to his [child's] welfare….") (emphasis in original).

Here, "[James] continued to place the child in harm's way by putting a significant quantity of heroin and cocaine in the child's car seat, placing the child in the car seat, and attempting to smuggle the child by the police so that the drug-trafficking activity could continue." Amended Notice of Intent to Dismiss, 11/10/15, at 6. Because there was sufficient evidence to sustain a conviction of endangering the welfare of children, the underlying claim is not of arguable merit. *See Commonwealth v. Henke*, 851 A.2d 185, 187 (Pa. Super. 2004) (stating that "[c]ounsel will not be deemed ineffective for failing to raise a baseless claim"). Therefore, James is not entitled to relief on the basis that his appellate counsel was ineffective for failing to raise this claim on direct appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2016